**INTERSTATE COMMERCE COMMISSION, Plaintiff,**

v.

**INTERSTATE CONTRACT CARRIER CORPORATION, Defendant.**

**No. C–83–1254A.**

United States District Court,
D. Utah, C.D.

Nov. 20, 1984.

Mitchell Haller, Asst. Regional Counsel, I.C.C., San Francisco, Cal., Brent D. Ward, U.S. Atty. for Utah, Salt Lake City, Utah, for plaintiff.

Richard A. Peterson, Peterson, Bowman & Johanns, Lincoln, Neb., Stephen H. Anderson, Ray, Quinney & Nebeker, Salt Lake City, Utah, for defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Chief Judge.

Plaintiff and defendant moved for summary judgment. The facts are undisputed. Defendant Interstate Contract Carrier ("Interstate") operates as an interstate carrier, holding authority from the Interstate Commerce Commission ("Commission or ICC"). Stipulation of fact, p. 4, ¶ 8. Instead of owning its own equipment, Interstate contracts with independent owner-operators who provide carrier service for Interstate. *Id.* at ¶ 9. As part of this arrangement Interstate enters into lease agreements with the owner-operators. These lease agreements provided that if after the com-

pletion of a trip a potential cargo claim exists against an owner-operator, then Interstate deducts $50.00 from subsequent trip payments. A potential cargo claim exists when Interstate believes a claim may be made against it as evidenced by notations made on delivery receipts at the time of delivery. *Id.* at 5, ¶ 12. These $50.00 deductions continue until the amount of the reserve for the potential cargo claim is reached. *Id.* The deductions occur even if no claim is ever filed, and the money is kept by Interstate until the nine month claim limitations period expires. *Id.* at 6, ¶ 14. No interest is paid and Interstate has the free use of the owner-operators' money. Oral argument, October 19, 1984. The ICC challenges this arrangement. The Commission promulgated regulations which it claims prohibits such deductions. 49 C.F.R. § 1057.12(g) provides that payment must be "made within 15 days after submission of the necessary delivery documents. 49 C.F.R. § 1057.12(g) (1984). Under the regulations Interstate can require that owner-operators deposit funds into escrow accounts which can then be applied to any claim that arises. *Id.* at § 1057(1). Nevertheless, escrow funds must be returned no later than 45 days from the date of termination. Moreover, interest must be paid on these accounts for the benefit of the owner-operator. *Id.* at § 1057(1)(5), (6).

Defendant argues that the regulations do not expressly prohibit its deduction practice since the deduction occurs only after the trip is completed and a possible claim exists. On the other hand, the commission contends that payment must be made within the 15 day period required by the regulation; no withholding is allowed. Thus, the narrow issue for decision is whether Interstate's deduction practice violates the regulation and should be enjoined.

As a preliminary matter, the Court observes that the Commission's authority to promulgate and enforce this regulation was challenged in the case of *Wales Transp. Inc. v. Interstate Commerce Commission,* 728 F.2d 774 (5th Cir.1984). There the Fifth Circuit held that the Commission did not exceed its authority in the promulga-

tion and enforcement of § 1057.12(g). Section 1057.12(g) requires that payment to owner-operators be made within 15 days and that payment cannot be "contingent upon submission of a bill of lading to which no exceptions have been taken." 49 C.F.R. § 1057.12(g) (1984).

In sustaining this regulation the Fifth Circuit noted that the regulation represented "the Commission's attempts to solve inequities facing owner-operators ... [and] to achieve the purpose of prompt payment of owner-operators." *Wales Transp. Inc.,* 728 F.2d at 781. Plaintiff's delayed payment scheme represents an attempt to circumvent the express policy of the regulation. The ICC argues that payment within 15 days means payment in full and this Court is inclined to agree.

Interstate has several methods available that will protect its interest in ensuring that independent owner-operators remain responsible for any damage that occurs to goods in shipment. These include, but are not limited to, the maintenance of escrow funds, *see, e.g.,* 49 C.F.R. 1057.12(1), the proper selection of honest and reputable independent owner-operators, and procurement of insurance. Interstate Contract Carrier Corporation's operating revenues were between 60 and 70 million dollars in 1982, and as the Commission properly observed in its brief: "Failing to obtain adequate insurance coverage, or not taking sufficient care in the selection of its owner-operators, may well make [the risk of a claim being filed] one that is an inherent incident to [Interstate's] motor operations." Plaintiff's memorandum in support of motion for summary judgment at 9.

Based on the economic realities that exist between carriers such as Interstate and the independent owner-operators as well as the importance of the owner-operators to the nation's transportation system, the Commission promulgated regulations designed to protect owner-operators from cash flow hardships that might ensue if carriers were allowed to withhold payment for long periods of time. Defendant Interstate's policy

of withholding subsequent trip payments of $50.00 per trip defies the clear regulatory policy and structure.

Accordingly, IT IS THE JUDGMENT OF THIS COURT that plaintiff's motion for summary judgment is granted. Defendant Interstate Contract Carrier Corp. is hereby enjoined from deducting subsequent trip payments in any amount for the purpose of satisfying a potential cargo claim; is ordered to submit an accounting to the Interstate Commerce Commission, within 30 days of this order, identifying those who have suffered loss or damage due to defendant's illegal actions and the amounts of the loss or damage; is ordered to make restitution with 60 days of this order to each person who has suffered loss or damage due to the withholding policy.