860 P.2d 646

**Ernest HOLSCHER and Abbielena Holscher, Plaintiffs–Respondents– Cross Appellants,**

v.

**Curtis E. JAMES and Brenda S. James, and State Farm General Ins. Co., Defendants–Appellants–Cross Respondents.**

**No. 19900.**

Supreme Court of Idaho,
Idaho Falls, May 1993 Term.

Sept. 1, 1993.

Rehearing Denied Oct. 21, 1993.

Quane, Smith, Howard & Hull, Pocatello, for appellants. Douglas J. Balfour, argued.

McGrath, Baker & Marotz, Idaho Falls, for respondents. Dwight E. Baker, argued.

SILAK, Justice.

Curtis and Brenda James signed an agreement to purchase a cabin and five acres of land from Ernest and Abbielena Holscher. Before the closing date, the Jameses insured the cabin by entering into an insurance binder [1] with State Farm General Insurance Co. through one of its agents. The Jameses then took possession of the premises. Thereafter, but also prior to closing, the cabin was destroyed by fire. The parties disputed who should bear the loss of the cabin. The district court entered judgment in favor of the Holschers, concluding that State Farm was obligated to pay the insurance proceeds to the Jameses pursuant to the insurance binder, and that equitable principles required the Jameses to pay the Holschers the value of the cabin. As set forth below, we reverse that portion of the district court's judgment which held the Jameses liable for the loss of the cabin, and we affirm the judgment against State Farm, although on different grounds, concluding that the Holschers are entitled to recover directly against State Farm as third-party beneficiaries of the James/State Farm insurance binder.

## FACTS AND PROCEDURAL BACKGROUND

On March 29, 1989, the Jameses and Holschers entered into a purchase agreement whereby the Jameses agreed to purchase from the Holschers a cabin and five acres. Under the terms of the purchase agreement, the Jameses deposited $500 as

---

1. An insurance binder is a contract for insurance in the form of "[a] written memorandum of the important terms of contract of insurance which gives temporary protection to insured pending investigation of risk by insurance company or until a formal policy is issued." BLACK'S LAW DICTIONARY 169 (6th ed. 1990).

earnest money towards the purchase price of $50,000. The purchase agreement specified May 1, 1989, as the closing date for the transaction. Paragraph 13 of the purchase agreement also provided that "[s]hould the premises be materially damaged by fire or other causes, prior to closing this sale, this agreement shall be voidable at the option of the Buyer."

On April 5, 1989, the Jameses entered into an insurance binder with State Farm to insure the cabin. The insurance binder provided $50,000 coverage on the cabin and $35,000 coverage on the contents of the cabin. A section of the binder form entitled "other int[erests]" provided for the listing of parties other than the named insured who, by virtue of some interest in the covered property, would have a beneficial interest in the insurance. In this section of the binder, the State Farm agent listed the name and address of Ernest Holscher. The binder stated that its effective date was April 5, 1989, and the Jameses made their first premium payment that same day. The amount of the premium was calculated to pay for coverage beginning on April 5th. The Holschers did not themselves purchase any insurance coverage for the cabin.

Also on April 5, 1989, pursuant to the purchase agreement, the Jameses took possession of the property and began moving their personal belongings into the cabin. On April 11, the Jameses moved more of their belongings into the cabin. At about 5 p.m. or 6 p.m. on the 11th, the cabin caught fire and was destroyed. The district court found that the fire was not the fault of either party, and the parties do not dispute that finding. Prior to May 1, the date set for closing, the Jameses notified the Holschers that, because the cabin had been destroyed, they were exercising their option under paragraph 13 to void the purchase agreement.

The Holschers subsequently sued the Jameses and State Farm seeking to recover the value of the cabin. At trial, two issues were submitted to the jury for determination: (1) whether the Holschers were intended beneficiaries of the insurance binder between the Jameses and State Farm, and (2) the fair market value of the cabin at the time it was destroyed. The jury returned a verdict finding that the Holschers were not intended beneficiaries of the insurance binder, and that the fair market value of the cabin was $36,125. The district court entered judgment on the jury's verdict in favor of State Farm, concluding that the Holschers were not third-party beneficiaries, and therefore that they had no claim under the James/State Farm insurance binder.

Two equitable issues were tried to the court: (1) whether the purchase agreement should be reformed, based on mutual mistake, to provide that the Jameses bore the risk of loss prior to closing, and (2) whether the doctrine of equitable conversion applied to shift the pre-closing risk of loss to the Jameses. The district court concluded that reformation of the purchase agreement was inapplicable in this case based on its finding that there was no mutual mistake regarding allocation of the risk of loss or the obligation to insure the property prior to closing because the parties never even considered, much less reached an agreement upon, those issues. The district court did not determine the second issue, whether equitable conversion applied to shift the risk of loss to the Jameses.

However, the district court entered judgment in favor of the Holschers based on two other conclusions: (1) that State Farm was liable to the Jameses for the value of the cabin, and (2) that the Jameses were liable to the Holschers for the value of the cabin. The court concluded that State Farm was liable to the Jameses by applying the doctrine of equitable conversion to determine that the Jameses had an insurable interest in the cabin, and therefore, under the insurance binder, they were entitled to the insurance proceeds after the cabin was destroyed. The court reached its second conclusion, that the Jameses were liable to the Holschers for the value of the cabin, based on its construction of paragraph 13 of the purchase agreement. The court construed paragraph 13 to mean that if the premises were materially damaged

prior to closing, the Jameses were entitled to seek equitable rescission of the contract from the court. From this the district court reasoned that the Jameses could not avail themselves of the equitable remedy of rescission unless they restored the Holschers to their pre-contract position. Based on its two conclusions, the district court ordered State Farm to pay the Jameses the proceeds of the insurance on the cabin, and then ordered that the Jameses pay the insurance proceeds to the Holschers before they could void the purchase agreement.

## ISSUES ON APPEAL

The appeal and cross-appeal of the parties require us to address three issues: (1) whether the district court erred in its application of the doctrines of equitable conversion and equitable rescission; (2) whether the district court erred in entering judgment on the jury's finding that the Holschers were not third-party beneficiaries of the James/State Farm insurance binder; and (3) whether the Holschers should be awarded attorney fees against State Farm under I.C. § 41–1839. We address each of these issues in turn.

## ANALYSIS

### I. Applicability of Equitable Conversion and Equitable Rescission.

The parties raise three issues regarding the application of equitable conversion and rescission. The Holschers assert that the district court erred by not applying equitable conversion to conclude that the risk of loss was on the Jameses at the time of the fire. State Farm asserts that the district court erred because it did apply equitable conversion to conclude that the Jameses had an equitable, and thus insurable, interest in the cabin at the time of the fire. Finally, the Jameses claim that the district court erred by applying the doctrine of equitable rescission to conclude that they were liable to the Holschers for the value of the cabin.

■ *A. Whether the District Court Should Have Applied Equitable Conversion to Conclude that the Jameses Bore the Risk of Loss Prior to Closing.* This Court has explained the doctrine of equitable conversion as follows:

The doctrine of equitable conversion is a fiction resting upon the fundamental rule of equity that equity regards that as done which ought to be done. Under the doctrine, an equitable conversion takes place when a contract for the sale of real property becomes binding on the parties. The purchaser is then treated in equity as having an interest in realty, and the vendor an interest in personalty, that is, the right to receive the purchase money.

*First Security Bank of Idaho v. Rogers*, 91 Idaho 654, 657, 429 P.2d 386, 389 (1967). Thus, when equitable conversion applies, the contract purchaser is deemed the equitable owner of the realty, and assumes the risk of loss on the property. *Rector v. Alcorn*, 241 N.W.2d 196, 200 (Iowa 1976). The Holschers assert that the district court should have applied equitable conversion to place the risk of loss of the cabin on the Jameses, as purchasers and equitable owners of the property. For the following reasons, we disagree.

■ The doctrine of equitable conversion applies only if "nothing in the contract states otherwise." *Rush v. Anestos*, 104 Idaho 630, 634, 661 P.2d 1229, 1233 (1983); *Rector*, 241 N.W.2d at 200. Thus, equitable conversion does not apply if the effect would be to shift the risk of loss to a buyer contrary to the terms of the parties' agreement. *Id.* In this case, paragraph 13 of the parties' purchase agreement provided: "Should the premises be materially damaged by fire or other causes, prior to closing this sale, this agreement shall be voidable at the option of the Buyer." We construe this provision as placing the risk of loss prior to closing on the Holschers. In a factually similar case, Georgia's Supreme Court held that when a provision in a purchase agreement allows the buyer to cancel the agreement if the premises are destroyed prior to closing, the effect of that provision is to allocate to the seller the risk of loss prior to closing. *Phillips v. Bacon*, 245 Ga. 814, 267 S.E.2d 249 (1980). *See also Bishop Ryan High School v. Lind-*

berg, 370 N.W.2d 726 (N.D.1985); *Rector*, 241 N.W.2d at 201. The same reasoning applies here. Paragraph 13 absolved the Jameses from assuming the risk of any material damage to the property prior to closing, leaving that risk upon the Holschers. It would be inconsistent and illogical to say that the Jameses had the right to void the purchase agreement if the premises were materially damaged prior to closing, but also hold them responsible to pay for any pre-closing damages to the property. Such a construction would essentially take away the very right conferred upon the Jameses by paragraph 13. Because we construe paragraph 13 of the parties' purchase agreement as placing the pre-closing risk of loss on the Holschers, we hold that the district court did not err in refusing to apply the doctrine of equitable conversion to shift the pre-closing risk of loss to the Jameses.

*B. Whether the District Court Erred by Applying Equitable Conversion to Conclude that the Jameses had an Insurable Interest in the Cabin Prior to Closing.* State Farm challenges the district court's conclusion that it was liable to the Jameses under the insurance binder, contending that the Jameses lacked an insurable interest in the cabin at the time of the loss, and I.C. § 41–1806 prohibits any person from enforcing a contract of insurance against an insurer unless that person has an insurable interest in the insured property. By applying the doctrine of equitable conversion, the district court concluded that the Jameses had equitable ownership of, and thus an insurable interest in, the cabin at the time of the loss. The arguable lack of an insurable interest in the Jameses is not conclusive, however, under I.C. § 41–1806, for it is the Holschers, not the Jameses, who are seeking to enforce the insurance contract against State Farm. The Holschers assert coverage in their own right as intended third-party beneficiaries of the insurance binder, not as derivative beneficiaries of the Jameses' rights under the binder. State Farm has not asserted that the Holschers lacked an insurable interest in the property at the time of the loss. Because the Jameses are not seeking to enforce the insurance contract against State Farm, we need not decide whether they had an insurable interest in the cabin at the time of the loss.

■ *C. Whether the District Court Erred in Applying Equitable Rescission to Conclude that the Jameses were Liable for the Value of the Cabin.* The district court construed paragraph 13 of the purchase agreement as giving the Jameses the right to seek equitable rescission of the contract from the court in the event that the premises were materially damaged prior to closing. Based on this determination, the district court concluded that the Jameses could not "equitably rescind" the purchase agreement unless they restored the Holschers to their pre-contract position. The legal meaning and effect of contract terms are questions of law which we review freely. *Barr Development, Inc. v. Utah Mortg. Loan Corp.*, 106 Idaho 46, 47, 675 P.2d 25, 26 (1983).

■ Paragraph 13 gave the Jameses the right *under the contract* to void the contract at *their option* if the premises were materially damaged prior to closing. They did not need to apply to the court and prove the elements essential to a decree of equitable rescission before they could void the contract. Once the premises were materially damaged, the Jameses' right to void the contract was "at law," under the terms of the contract. They could simply refuse to close. A right provided by contract is, by definition, legal and not equitable. Equitable remedies are not dependent upon contractual authorization, but apply precisely because there is no adequate remedy at law under the contract's terms, and because sufficient grounds to invoke equity, such as mutual mistake, fraud, or impossibility, are present. We hold that under paragraph 13 of the parties' purchase agreement the Jameses had the legal right to void the contract once the premises were materially damaged, and their choice to exercise that right was not dependent on their satisfaction of the elements required for the application of equitable rescission. Accordingly, the district court erred in con-

cluding that the Jameses were obliged to restore the value of the cabin to the Holschers.

## II. Third-party Beneficiary Status of the Holschers under the James/State Farm Insurance Binder.

■ At trial, the Holschers submitted as evidence a copy of the insurance binder between the Jameses and State Farm to show that they were intended third-party beneficiaries of that agreement. The Holschers asserted that the listing of Ernest Holscher in the section of the binder entitled "other interests" unambiguously demonstrated that they were intended beneficiaries of the insurance coverage, and therefore no extrinsic evidence was admissible to prove otherwise. The district court, however, over the Holschers' objection, allowed the insurance agent who executed the insurance binder to testify that he did not intend the Holschers to be beneficiaries of the binder prior to closing. The agent testified that he listed Ernest Holscher on the binder under the section entitled "other interests" only because he was told the Holschers would become mortgagees at the time of closing and he wanted to have their name and address so he could send them a copy of the policy insuring their mortgagee interest after the transaction closed. The district court concluded that the insurance binder was ambiguous as to the Holschers' beneficiary status at the time of the loss, and submitted the issue to the jury for resolution. The jury found that the Holschers were not intended beneficiaries of the insurance binder, and the district court entered judgment on that verdict. The Holschers contend that the district court should not have submitted this issue to the jury, but should have ruled as a matter of law that they were intended beneficiaries of the insurance binder.

In *Stewart v. Arrington Construction Co.,* 92 Idaho 526, 446 P.2d 895 (1968), the Court stated that the contract itself must express an intent to benefit the third party. "This intent must be gleaned from the contract itself unless that document is ambigu-

ous, whereupon the circumstances surrounding its formation may be considered." *Id.* at 532, 446 P.2d at 901. The insurance binder in this case was executed on a form contract. A section of the binder provided for the listing of persons, other than the contracting party, who were to have a beneficial interest in the insurance. In addition to space for writing the name and address of the person with the other beneficial interest, this section provided three possible categories of beneficial interests which the person might have: as a mortgagee, a loss payee, or a named additional insured. In this case, the insurance agent listed Ernest Holscher as a person with a beneficial interest under the binder, but the agent did not mark any of the three boxes to indicate which type of beneficial interest Holscher had. The effective date of coverage as stated on the face of the binder was April 5, 1989. State Farm calculated the insurance premium to begin coverage on April 5th, and the Jameses paid State Farm the assessed premium on that date.

State Farm does not dispute that Ernest Holscher was intended to have a beneficial interest in the insurance, only whether he was intended to have a beneficial interest prior to closing. State Farm asserts that it intended to insure only the Holschers' "mortgagee" interest in the property, which the Holschers would not have acquired until closing on May 1. However, State Farm, as drafter of the binder, may not now create an ambiguity by asserting that it did not intend for the Holschers to become beneficiaries until May 1, when the face of the binder clearly states that the Holschers were to have a beneficial interest in coverage effective on April 5th. State Farm gave no indication on the binder that it intended to limit the time of the Holschers' beneficial interest contrary to the effective date specified on the binder. State Farm's agent did not mark the box indicating that the nature of the Holschers' beneficial interest was to be that of mortgagee, nor did the agent add any written words expressly limiting the time of the Holschers' beneficial interest to after closing.

■ "It has long been the rule of this Court that a contract should be construed most strongly against the party preparing it. Furthermore in cases involving ... insurance contracts, where the language of the contractual provision may be given one of two meanings, one of which permits recovery and the other forbidding it, the contract is to be construed in favor of the insured." *Toevs v. Western Farm Bureau Life Insurance Co.*, 94 Idaho 151, 153, 483 P.2d 682, 684 (1971). It was State Farm who drafted the written agreement proposing the terms of coverage in this case. It must be acknowledged that the ability of insurers to induce purchasers to accept their proposed terms of insurance depends largely on the price and breadth of the coverage offered, or the lack of limiting conditions on the coverage. When an insurer has induced an insured to purchase its insurance by proposing terms of coverage which might reasonably be construed as being broad and inclusive of certain risks, we will not allow that insurer to subsequently deny coverage of those risks by asserting exceptions or limitations which were not clearly and unambiguously stated in the contract for insurance. Accordingly, we refuse to supply words of limitation to the insurance contract in this case where State Farm, the preparer of the contract, did not do so.

Because the insurance binder listed the Holschers as having a beneficial interest in the insurance with April 5, 1989, as the effective date of coverage, and because the binder contained no words limiting the coverage either to the Holschers' mortgagee interest in the property or to their post-closing losses, we hold that the insurance binder unambiguously provided the Holschers with a beneficial interest in the insurance to cover whatever insurable interest they had in the property as of April 5, 1989. We will not read into the binder a time or nature-of-interest limitation which State Farm did not deem important enough to write into the binder. We hold as a matter of law that the Holschers were third-party beneficiaries under the insurance binder, and that this beneficial interest was limited only to the extent of their insurable interest in the cabin under I.C. § 41–1806.

■ The district court therefore erred in submitting this issue to the jury and in admitting the parol evidence of the insurance agent. Because the Holschers' insurable interest in the cabin at the time of the loss—as legal owners and risk-of-loss bearers—encompassed the full value of the cabin, the Holschers were entitled to recover from State Farm insurance proceeds up to the full value of the cabin. Therefore, we modify the district court's judgment to hold that State Farm is directly liable to the Holschers under the insurance binder.

### III.  Attorney Fees against State Farm under I.C. § 41–1839.

■ Section 41–1839 provides as follows:

Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

Because the district court entered judgment in favor of State Farm below, the district court did not award attorney fees to the Holschers under I.C. § 41–1839. In view of our decision that the Holschers should have prevailed on their claim against State Farm, we hold that the Holschers should be awarded reasonable attorney fees against State Farm, both at the trial level, *Associates Discount Corp. of Idaho v. Yosemite Ins. Co.*, 96 Idaho 249, 257, 526 P.2d 854, 862 (1973), and on appeal, *Stephens v. New Hampshire Ins. Co.*, 92 Idaho 537, 542, 447 P.2d 14, 19 (1968).

## CONCLUSION

We hold that the parties' purchase agreement placed the pre-closing risk of loss on the Holschers, and allowed the Jameses to void the agreement at their option once the premises were materially damaged prior to closing. Accordingly, we reverse the district court's judgment holding the Jameses liable to the Holschers. We further hold that the Holschers were intended third-party beneficiaries of the insurance binder between the Jameses and State Farm, and therefore the Holschers are entitled to judgment against State Farm for the proceeds of that insurance. The Holschers are also entitled to an award of reasonable attorney fees against State Farm. We remand the case to the district court for modification of the judgment with respect to State Farm and for further proceedings consistent with this opinion.

Costs and attorney fees on appeal are awarded to the Holschers against State Farm.

McDEVITT, C.J., and BISTLINE, JOHNSON and TROUT, JJ., concur.