927 P.2d 873

**Stanley R. TAYLOR, an individual, Plaintiff–Appellant,**

v.

**Donald R. BROWNING, an individual, sometimes doing business as Browning Trucking, Defendant–Respondent.**

No. 22427.

Supreme Court of Idaho, Boise, September 1996 Term.

Oct. 25, 1996.

Rehearing Denied Dec. 18, 1996.

Nyman & Thomas, Boise, for plaintiff–appellant. Kenneth D. Nyman argued.

Ambrose, Fitzgerald & Crookston, Meridian, for defendant–respondent. Wayne Crookston, Jr., argued.

SILAK, Justice.

This is a breach of contract case involving two lease-option agreements, one for a semi-truck and one for a trailer, both executed in 1989, and two lease-back agreements for the truck and trailer (the equipment), one executed in 1989 and the other in 1991. Appellant Stanley R. Taylor (Taylor) sued Respondent Donald R. Browning (Browning) in district court, which granted partial summary judgment and decided the remaining issues after a bench trial. The district court issued an initial decision that Taylor owed Browning $62.56 more than Browning owed Taylor under the respective agreements, and that Taylor had forfeited his option to purchase the equipment. After Browning filed a motion for reconsideration, the district court awarded further damages to Browning and held that Browning had not failed to mitigate his damages. Taylor appeals.

## I.

## BACKGROUND

### A. Facts

On June 1, 1989, Taylor and Browning entered into two lease-option (or lease-purchase) agreements, one for a semi-truck and one for a trailer. Under those agreements, Taylor was to pay Browning $1,240 per month to lease the equipment from Browning. The lease-option agreements also contained a "Rental Termination Adjustment Agreement" which estimated the combined value of the equipment at the end of the lease as $3600. When the leases automatically terminated in May 1992, Browning was to obtain bids in order to establish the fair market or "realized" value. If the realized value exceeded the estimated value, the excess was to go to Taylor. If the reverse was true, Taylor was required to pay that difference to Browning. If the realized value was not established through the bidding process, the estimated value would be used. Finally, the lease-option agreements gave Browning the right to declare a default by written notice to Taylor upon material breach, although Browning did not do so until several months after Taylor filed the lawsuit in this case.

When the parties executed the lease-option agreements, they also executed a lease-back agreement [the 1989 agreement], under which Taylor leased the equipment back to Browning. Browning would find loads for Taylor to haul, and would pay Taylor at regular intervals. The parties later terminated the initial lease-back agreement and executed another on June 1, 1991. Under the 1989 agreement, Browning was required to pay Taylor within 45 days of receiving the paperwork for loads Taylor hauled, while under the 1991 agreement payment was to be made on the fifth and twentieth of each month. Both agreements provided that Taylor was to pay worker's compensation, insur-

ance payments, taxes, licensing fees and fuel and maintenance costs. However, Browning could also deduct any advances he made from the settlement checks, and under the 1991 agreement could also deduct ten percent of gross revenue or $1000 per month, whichever was greater, as lease revenue.

Over the course of the contracts, Browning paid worker's compensation and other insurance, fuel, taxes and other charges, and deducted those charges from the settlement amounts he owed Taylor. When Taylor fell behind in his lease-option payments, he requested that those amounts be deducted from the settlement checks as well. At the time the agreements ended, Taylor was still behind by four payments.

On June 1, 1992, Scott Rose (Rose), Taylor's attorney at the time, went to Browning's office with a check for $3600, the option price amount. Joyce Matlock (Matlock), Browning's office manager, refused to accept the check, and the parties dispute whether she ever had it in her physical possession. Several days later, Rose and Taylor returned with a check and spoke to Browning. Although Rose stated that he had the check, and offered to tender it, Browning never actually saw it. Because Browning felt that Taylor owed him money in addition to the $3600 option price, the parties agreed that Browning would determine what each side owed the other. On June 15, 1992, Browning's attorney sent a letter and accounting to Taylor's attorney (the June 15 accounting), which showed that Browning owed Taylor $13,826.81 and Taylor owed Browning $15,108.31, for a difference of $1,281.50. The amount Taylor owed Browning included the $3600 purchase price. Taylor disputed that accounting and therefore never paid the difference. On December 31, 1992, Browning repossessed the equipment from Taylor's driveway and presented Mrs. Taylor with a note (the December 31 accounting), showing that Taylor owed Browning back payments, the purchase price and interest.

## B. Procedure

On June 29, 1992, Taylor filed suit, claiming that Browning had withheld excess amounts from settlement checks, did not transfer titles to the equipment even though he had retained full payment for them, violated federal regulations regarding account settlements, violated Idaho law regarding employer and employee relations, and breached the implied covenant of good faith and fair dealing. Browning answered and counterclaimed, alleging that Taylor defaulted on the lease-option agreements, that there was a failure of consideration, that the federal regulations did not apply to this particular situation, and that the indemnity clause in the agreements barred any recovery by Taylor against Browning.

Browning also filed a motion for summary judgment on the claim and counterclaim. The trial court denied the motion for summary judgment on some of the claims and denied summary judgment on all of Browning's counterclaims. However, contrary to Browning's assertions, the district court found that the agreements' indemnity provisions did not bar recovery by Taylor. Instead, the court ruled that those provisions applied to third-party negligence situations, and were simply a recitation of agency law. The court also determined that the relationship between Taylor and Browning was that of an owner and independent contractor, and that Taylor was not entitled to punitive damages.

Taylor had argued that federal regulations required that Browning pay him within fifteen days of receiving the necessary paperwork, and that Browning violated those regulations by withholding the final settlement payment. The district court found that the course of conduct between the parties indicated that an agreed-upon system of set-offs had orally modified the contract, and that Browning withheld the final settlement because Taylor owed Browning more than Browning owed Taylor. Therefore, the court ruled, Taylor was not harmed by the conduct.

Just prior to trial, Browning prepared yet another accounting (the pre-trial accounting) which indicated that the fuel and taxes charge in the June 15 accounting had been too high, but that also included $4,283.83 in worker's compensation settlements over the previous two and one-half years. Most of those charges were under the 1989 lease-

back agreement. After a bench trial on the matter, the district court filed findings of fact, conclusions of law, and a judgment in June 1994. The court found that Taylor elected not to purchase the equipment when he refused to pay the $1,281.50 Browning calculated Taylor owed him. Therefore, Taylor could only recover the $11,943.23 Browning owed to him. Further, Browning's damages were limited due to failure to mitigate by not repossessing the truck and trailer earlier. However, Browning was permitted to retain the equipment and recover the $12,005.79 Taylor owed to him when the agreements ended. Judgment was entered for Browning for $62.56.

Browning filed a Motion for Reconsideration of the decision, and Taylor filed a Motion to File an Amended Answer to Counterclaim to include the affirmative defense of failure to mitigate. The district court found that there was no evidence at trial regarding Browning's failure to mitigate, and that Taylor had failed to affirmatively plead mitigation. Therefore, the court denied Taylor's motion to file an amended answer, and granted Browning's motion for reconsideration on the mitigation issue. It also stated that "[t]he only damages asserted by counterclaimant [Browning] which are not supported by the evidence are the $100 per day for not returning the equipment."

The district court requested proposed findings of fact, conclusions of law and judgment from the parties. The findings, conclusions and judgment as set forth by Browning did not conform to the district court's actual decision. Browning's version awarded himself increased damages, reversed the court's summary judgment decision regarding indemnity, and gave Taylor no credit for the amounts he was owed for his work. Taylor objected to the proposed forms, and on August 2, 1995, Browning admitted that they did not comport with the district court's decision. However, the district court had already signed the judgment, although it had rejected the proposed findings of fact and conclusions of law. Therefore, while the record contains a final judgment dated August 2, 1995, the only findings of fact and conclu-

sions of law in the record are those which were originally filed in June 1994.

## II.

### ISSUES ON APPEAL

1. Having withheld the balance of the purchase price and the $3600 option payment from his last settlement with Taylor, can Browning deny that Taylor made those payments?

2. Was Browning entitled to refuse to turn over the title to the truck and trailer by adjusting past "settlements"?

3. Was Browning entitled to include in a settlement under the June 1, 1991 lease-back agreement charges that he failed to include in settlements under the 1989 lease-back agreement?

4. Did Browning breach the implied covenant of good faith and fair dealing when he did not give Taylor enough information to make an informed decision on the amount he owed?

5. If Browning is entitled to prevail, are his damages limited to the contractually agreed upon values of the truck and trailer?

6. Should the district court have allowed Taylor to amend his pleadings to conform to the evidence?

7. Is Browning entitled to be indemnified for his own misfeasance?

8. Should Taylor have been awarded punitive damages?

## III.

### STANDARDS OF REVIEW

We begin by noting our standards of review. This appeal stems from two decisions: partial summary judgment and a decision after a bench trial. When this Court reviews a motion for summary judgment, it employs the same standard properly employed by the trial court when originally ruling on the motion. *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). Under I.R.C.P. 56(c), summary judgment is proper if "the plead-

ings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *McCoy v. Lyons,* 120 Idaho 765, 769, 820 P.2d 360, 364 (1991); I.R.C.P. 56(c)). Finally, this court liberally construes the record and will draw all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. 126 Idaho at 529, 887 P.2d at 1036.

■ On a decision after a trial, we will uphold a trial court's findings of fact if supported by substantial and competent evidence. *Cluff v. Bonner County,* 126 Idaho 950, 952, 895 P.2d 551, 553 (1995). On the other hand, this Court freely draws its own conclusions from the facts presented. *Id.* Finally, this case centers around four contracts. When considering such a case, "the legal meaning and effect of contract terms are questions of law which we review freely." *Holscher v. James,* 124 Idaho 443, 447, 860 P.2d 646, 650 (1993).

## IV.

## ANALYSIS

A. **Having Withheld The Balance Of The Purchase Price And The $3600 Option Payment From His Last Settlement With Taylor, Browning Cannot Deny That Taylor Made Those Payments.**

### 1. Tender of the option price was excused.

■ Browning argues that Taylor did not tender the option price, but only *offered* to tender the check. Therefore, Taylor essentially forfeited his right to purchase the equipment. This Court has stated that in order for tender to occur,

> [t]he law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is unaccompanied by any visible manifestation of intention to make the offer good.

*Pollard Oil Co. v. Christensen,* 103 Idaho 110, 116, 645 P.2d 344, 350 (1982).

The district court did not make a specific ruling regarding tender. However, it did find that at the first meeting among Taylor, his attorney Scott Rose, and Browning's bookkeeper Joyce Matlock, and at the second meeting with Browning, the parties were aware that Rose had the check and was prepared to turn it over. Although there may have been a spoken offer of tender, the record indicates that the check was never physically handed to Browning.

Nevertheless, even if we assume actual tender did not occur, "[a]ctual production of the money or property is not necessary, if the party to whom it is offered refuses to receive it, especially in view of the rule ... that actual tender is waived by such refusal." 74 Am.Jur.2d *Tender* § 7 (2d. Ed.1974). The record reflects that Browning refused to take the check, and clearly indicated that he felt he was owed more money than the purchase price, and would not have taken the check even if it was offered to him. At the meeting's end, the parties agreed that Browning would determine the amounts each owed the other before any payments were made by either side.

Since Browning did or would have refused the check, we hold that tendering it would have been entirely futile, and tender was excused.

### 2. Because Browning credited the option price against the final settlement he owed Taylor, and subsequently repossessed the truck and trailer, he cannot deny that the option price payment was made.

■ In the initial June 15 accounting and the December 31 accounting, Browning credited the option price owed by Taylor toward the amounts he owed Taylor under the lease-back agreement. This action rendered physical tender of the option price amounts unnecessary, and Browning could not then deny that the option price payment was made.

In addition, Browning repossessed the equipment from Taylor in December 1992.

We hold that because Browning repossessed the truck and trailer, Browning is not entitled to the option price. We affirm the findings of the trial court on this issue.

### B. Browning Was Not Entitled To Refuse To Turn Over The Titles To The Truck And Trailer By Adjusting Settlements And Including Charges He Failed To Include Under The 1989 Lease–Back Agreement.

The trial court permitted Browning to include amounts in the pre-trial accounting which were derived by recalculating settlement payments made under the 1989 and 1991 lease-back agreements. Specifically, Browning examined his records and determined that he had failed to include workers' compensation deductions in some of the settlements. On appeal, Taylor argues that Browning should not be permitted to include workers' compensation amounts from the 1989 agreement. Browning, on the other hand, argues that the 1991 lease-back agreement was simply an extension of the 1989 agreement, and that it was therefore proper for the trial court to allow him to recompute past settlements.

■ If a contract's terms are "clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law, [citation omitted], and the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *City of Idaho Falls v. Home Indemnity Co.*, 126 Idaho 604, 607, 888 P.2d 383, 386 (1995).

■ The 1989 agreement contains a clause which states that the agreement "shall be for a minimum of thirty (30) days and shall continue in effect from month to month thereafter, until terminated by either party, or until one year from the effective date hereof, whichever date occurs sooner." An appendix to the 1989 agreement contains a clause which is headed "Contract Termination" and states "[t]his is to certify that I have given the necessary thirty (30) days notice of termination and am effecting final termination by the return of all documents and issuances." The clause is signed by both parties. Those two clauses clearly contemplate that the 1989 agreement would be fully terminated and no longer in effect.

Further, the 1991 lease-back agreement contains a merger clause which states that "[t]his Agreement constitutes the entire Agreement and understanding between the parties and shall not be modified, altered, changed or amended in any respect unless in writing and signed by both parties." That agreement does not state anywhere that it is a continuation of the earlier agreement; in fact, the agreement states that it is to commence on June 1, 1991.

The two agreements were clearly separate agreements, and when the termination clause was signed as to the earlier agreement and the new agreement executed, the 1989 agreement was terminated. If Browning was owed money under the 1989 agreement, his proper remedy was to sue under that agreement. However, he cannot recompute settlements from the 1989 agreement and recover any amounts still owed by offsetting amounts he owes Taylor under the 1991 lease-back agreement. Therefore, we reverse the trial court on this issue.

Taylor also argues that the doctrines of account stated and quasi-estoppel operate to prevent Browning from recomputing settlements under the 1989 agreement. Because we reverse the decision of the trial court on other grounds, we need not consider those arguments.

### C. Although 49 C.F.R. Section 1057.12(f) Is Applicable To This Contract, Taylor Was Not Harmed By Browning's Failure To Comply.

■ Title 49 of the Code of Federal Regulations sets forth the regulations of the Interstate Commerce Commission, and section 1057 governs leases between truck owners and the carriers to whom the owners lease their equipment for use in interstate commerce. Section 1057.12 is entitled "Written lease requirements," and sets forth several items which must be included in every lease between an owner and carrier. Subsection (f), which is at issue in this case, states that "[t]he lease shall specify that payment to the lessor shall be made within 15 days after

submission of the necessary delivery documents...."

On summary judgment, the trial court found that the parties had orally modified their contract and adopted a system of set-offs. This course of conduct led the trial court to conclude that Taylor was not harmed by Browning's failure to make the final settlement payment within fifteen days of receipt of the necessary documents. On appeal, Taylor argues that the regulation clearly applies in this situation, and that Browning violated it by withholding the final settlement check.

We hold that section 1057.12(f) applies to these lease-back agreements. When the Interstate Commerce Commission promulgated the regulation, it stated that "[t]he purpose of this rule is to assure that owner-operators are compensated promptly for services lawfully performed on behalf of the permanent lease carrier." 47 Fed.Reg. 51138 (November 12, 1982). As a federal district court has noted, "the Commission promulgated regulations designed to protect owner-operators from cash flow hardships that might ensue if carriers were allowed to withhold payment for long periods of time." *Interstate Commerce Comm'n. v. Interstate Contract Carrier Corp.*, 598 F.Supp. 661, 662 (D.Utah 1984).

The regulation itself uses the word "shall", clearly indicating that the fifteen day payment requirement is a mandatory part of every contract between an owner-operator and permanent lease carrier. When that plain language is combined with evidence of the Interstate Commerce Commission's intent, it becomes clear that section 1057.12(f) applies to the lease-back agreements in this case.

The particular situation at issue in this case, however, differs from the one contemplated by the regulations. First, the parties do not dispute that they orally modified their agreement and followed a course of conduct allowing set-offs, a course which was still being pursued at the time the agreements ended. Second, we note that the only "late payment" at issue in this case is the final settlement check. At that point, the agreements were at an end, and the parties were attempting to resolve their dispute regarding the amounts due. This situation clearly differs from the one contemplated by the regulations. Therefore, we affirm the ruling of the trial court that the parties had orally modified their agreement, and that Taylor was not harmed by Browning's withholding of the final settlement check beyond the permitted fifteen days.

We should note that Browning argues that it was permissible for him to withhold the final settlement because Taylor had not returned decals and other identification items from the equipment, thereby causing the $100 per day contractual penalty to become effective. However, the district court found that Browning was not entitled to those penalty amounts, and Browning does not appeal that decision. I.A.R. 35 requires the parties to raise and brief errors. Further, this Court " 'will not review the actions of the district court which have not been specifically assigned as error[,] [e]specially where there are no authorities cited nor argument contained in the briefs upon the question.' " *State v. Hoisington,* 104 Idaho 153, 159, 657 P.2d 17, 23 (1983) (quoting *Bolen v. Baker,* 69 Idaho 93, 99, 203 P.2d 376, 379 (1949)). Therefore, we will not consider that argument on appeal.

### D. Browning Did Not Breach The Covenant Of Good Faith And Fair Dealing.

Taylor next argues that the district court erred when it ruled on summary judgment that Browning did not breach the covenant of good faith and fair dealing. According to Taylor, Browning breached the covenant when he did not accept the option payment check, retained the final settlement check, waited until trial to provide a final accounting, and then asserted that Taylor had defaulted.

Good faith and fair dealing are implied obligations of every contract. *Idaho First Nat'l Bank v. Bliss Valley Foods,* 121 Idaho 266, 287, 824 P.2d 841, 862 (1991). The parties must cooperate with each other in order to get the full benefit of performance, although they are not obligated to accept a material change in contract terms.

The implied covenant of good faith and fair dealing arises only regarding terms agreed to by the parties. *Id.* at 288, 824 P.2d at 863.

 In this particular case, Browning's record-keeping may have been lacking, and we cannot approve of Browning's continual recalculations of the final settlement. However, we cannot say that such conduct was in bad faith. Since the parties had an oral agreement to proceed with the contracts by using a system of set-offs, it cannot be said that Browning acted unfairly by retaining the final settlement check. Further, as long as Browning had a good faith belief that he was correct in his accountings, and that Taylor owed him more than he owed Taylor, we cannot say that Browning acted in bad faith by withholding the final check.

 Taylor also argues that Browning's failure to supply a "timely and accurate accounting and settlement" deprived Taylor of his rights under the contract. However, even though his decision may have been correct, it was Taylor himself who decided to disagree with Browning's accountings, and to refuse to pay the amounts Browning calculated. The mere fact that there was a dispute between the parties regarding the amount each owed, and that the amount varied throughout the course of litigation does not necessarily give rise to a breach of the implied covenant of good faith and fair dealing. Accordingly, we affirm the summary judgment order of the district court on this issue.

### E. Browning's Damages Are Limited To Those Proven At Trial And Supported By Findings Of Fact.

In its initial decision, accompanied by findings of fact and conclusions of law, the trial court awarded $12,005.79 to Browning, which included $125.83 and $4,940 as the lease payment balance, $6,523.16 for operating costs (including worker's compensation under the 1989 agreement) and $396.80 as interest on past due payments. The court awarded $11,943.23 to Taylor for net receivables and an insurance refund. The net difference in the awards was $62.56 in Browning's favor.

However, the August 1995 judgment, rendered after Browning's motion for reconsid-eration, and the court's memorandum decision, was unaccompanied by findings of fact and conclusions of law. The trial court awarded Browning total damages of $97,106.89, which included $212.50 for repossession costs, $16,006.26 for alleged damages to the equipment while it was still in Taylor's possession, $1,912.82 for failure to pay lease revenues, and $396.60 for failure to pay lease revenues for loads Taylor dispatched himself. For the reasons discussed below, we reverse the trial court's award of damages under the August 1995 judgment and remand for findings consistent with this opinion.

At the outset, we note the requirements of Idaho Rule of Civil Procedure 52(a). That section states that

[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; ... A written memorandum decision issued by the court may constitute the findings of fact and conclusions of law only if the decision expressly so states or if it is thereafter adopted as the findings of fact and conclusions of law by order of the court.

I.R.C.P. 52(a). The requirement of finding facts and stating conclusions provides this Court with an understanding of the lower court's decision, and allows us to determine whether the trial court properly applied the law to the facts in reaching its judgment. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Finally,

[t]he absence of findings and conclusions may be disregarded by the appellate court *only* where the record is clear, and yields an obvious answer to the relevant question. Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered ...

*Id.* (citations omitted) (emphasis in original).

 Initially, we consider the award of lost profits in the amount of $67,085.55.

In general, lost profits are "not recoverable in contract unless there is something in that contract that suggests that they were within the contemplation of the parties and are proved with reasonable certainty." *Brown's Tie & Lumber v. Chicago Title*, 115 Idaho 56, 61, 764 P.2d 423, 428 (1988). The lease option agreements do not contain any clauses which suggest that lost profits were within the contemplation of the parties. Therefore, the first prong of the test has not been met. Further, the lost profit damages were not proven with reasonable certainty. At trial, Browning introduced evidence of his expenses and income from using the equipment in 1993 (after he had repossessed it) and Matlock testified that she "expected" the results would have been similar if Browning had possessed the equipment in 1992. However, that expectancy and the results from 1993 are not sufficient to prove the lost profits with reasonable certainty. Therefore, we reverse the trial court on this issue.

Several damages listed from the second judgment are unsupported by findings of fact. Those damages include repossession costs, damages to the equipment while it was still in Taylor's possession, lease revenues for loads Browning dispatched, and lease revenues for loads Taylor dispatched himself. Because those damages are unsupported by findings of fact in the record, we reverse the decision of the trial court and remand for further proceedings.

Further, we have already stated that Browning should not have been permitted to deduct workers' compensation amounts due under the 1989 lease-back agreement from the final settlement for the 1991 lease-back. Therefore, to the extent that the "workers' compensation insurance and other insurance" damages in the amount of $6,533.16 includes workers' compensation under the 1989 agreement, we reverse the trial court.

As to Taylor's damages, Browning conceded in his brief on appeal that "the Judgment did not reflect that the Court had found that Defendant did owe Plaintiff $9,800.23 but Defendant had forgotten about that and had not shown that as a credit in the Judgment. Defendant agrees that the Judgment should be amended to grant Plaintiff a credit

of $9,800.23." Also, Browning does not appeal the trial court's initial award of $2,143.00 for an insurance refund, nor did he raise that issue in his motion for reconsideration in the court below. Therefore, we hold that Taylor is entitled to the damages as initially awarded by the trial court on June 29, 1994.

### F. Taylor Should Have Been Permitted To Amend His Pleadings To Conform To The Evidence.

Taylor did not include the affirmative defense of Browning's failure to mitigate damages in his pleadings, but sought to amend his pleadings to conform to the evidence presented at trial. The trial court denied that motion, stating that it did not find any evidence during the trial regarding failure to mitigate by Browning, and therefore did not permit Taylor to amend his pleadings to include failure to mitigate. Since Taylor had not initially pled the affirmative defense of failure to mitigate, the trial court reversed its initial decision that Browning had failed to mitigate his damages.

Under I.R.C.P. 8(c), a party must set forth in his or her pleading any affirmative defenses to the other party's pleading. I.R.C.P. 15(b) modifies the requirements of I.R.C.P. 8(c). Rule 15 states that

> [w]hen issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . .

I.R.C.P. 15(b). The trial court has discretion in permitting such amendments, and the determination of whether an issue that was not raised by the pleading was tried by consent is also within the sound discretion of the trial court. *Sweitzer v. Dean*, 118 Idaho 568, 574, 798 P.2d 27, 33 (1990) (citations omitted). We have also held that amendments to pleadings should be liberally permitted, although we will not overturn a decision disallowing an

amendment absent a showing of abuse of discretion. *Id.* at 574–75, 798 P.2d at 33–4.

When deciding whether a trial court has abused its discretion, our analysis is threefold. This Court will determine:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Although the trial court correctly perceived the issue as a matter of discretion, we hold that the trial court did not act within the outer boundaries of its discretion.

Contrary to the trial court's finding, there was testimony at trial that Taylor offered to give Browning a lien in exchange for titles to the equipment, and that Browning did not repossess the equipment until more than six months after the agreement ended. Moreover, Browning introduced evidence of alleged charges he incurred and profits lost during the time he did not have the equipment.

The record thus demonstrates that the parties impliedly agreed to litigate the issue of mitigation, and the trial court's decision that there was no evidence regarding Browning's failure to mitigate was clearly erroneous. Under Rule 15(b), the issue of mitigation should have been treated as though it had been raised in the pleadings. Therefore, the trial court improperly exercised its discretion by not permitting Taylor to amend his pleadings to include the affirmative defense of failure to mitigate. We reverse the trial court's ruling on that issue and remand for further proceedings consistent with this opinion.

## G. The Indemnity Provisions Of The Agreements Do Not Bar Taylor's Claims.

In its June 29, 1994 decision, the district court ruled that contrary to Browning's arguments, the indemnity provisions of the lease-option and lease-back agreements did not bar Taylor's claims against Browning. However, the August 2, 1995 judgment, unsupported by new findings of fact and conclusions of law, stated just the opposite proposition. For the reasons stated below, we hold that decision was in error, and we reverse the August 2, 1995 decision.

The lease option agreements and the lease-back agreements all contain indemnity provisions. The indemnity clause in the lease option agreements provides that the lessee (Taylor) would indemnify the lessor (Browning) and hold him harmless "from any and all claims against the Lessor of any kind or nature whatsoever." The clause then lists several types of loss and damage claims for which the lessee would indemnify the lessor. The lease-back agreements also contain similar provisions in which Taylor agreed to hold Browning harmless "for any loss, damage, or expense which may be incurred by the Carrier [Browning] or anyone liable in his behalf as a result of negligence of the Contractor [Taylor] or his driver, or for any violation or failure to comply with any provisions of this lease agreement."

At the outset, it should be noted that Browning made no arguments and cited no authority to persuade us that the indemnity provisions should bar Taylor's claim. Therefore, he essentially concedes that the judgment was incorrect. However, even if he had not so conceded, our decision would be the same. This Court has stated that the three prima facie elements of indemnity are "(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount." *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 284, 766 P.2d 751, 754 (1988). While there was an indemnity relationship between Browning and Taylor, as set forth in the agreements, there clearly was no actual liability of Browning to a third party. In addition, as noted by the district court in its June 29, 1994 decision, it would be unreasonable to "allow Browning to potentially breach the lease agreements and then declare himself harmless" by using the indemnity provisions. Thus, we reverse the decision of the trial court as reflected in the August 2, 1995

judgment and reverse the ruling that the indemnity provisions barred Taylor's claims.

### H. Taylor Is Not Entitled To Punitive Damages.

On the motion for summary judgment, the trial court ruled that Taylor was not entitled to punitive damages. On appeal, Taylor argues that Browning's entire course of conduct was malicious and oppressive, and that punitive damages should have been allowed by the district court.

Punitive damages are disfavored, and they are to be awarded only in the face of unusual and compelling circumstances. *Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 128 Idaho 539, 549, 916 P.2d 1264, 1274 (1996). Further, it must be

> shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud or gross negligence;" "malice, oppression, wantonness;" or simply "deliberate and willful."

*Walston v. Monumental Life Ins. Co.*, 923 P.2d 456 (1996) (quoting *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983)). While Browning tried to make the necessary computations to his advantage, we cannot say that he acted with an extremely harmful state of mind. Therefore, we affirm the trial court's decision to deny punitive damages to Taylor.

### I. Neither Party Is Entitled To Attorney Fees On Appeal.

Each party has requested attorney fees on appeal under I.A.R. 41 and Idaho Code section 12–120(3). However, because we are remanding this case for further proceedings, neither party has prevailed and therefore neither is entitled to attorney fees.

## V.

## CONCLUSION

We affirm the trial court's decisions regarding tender and the effect of crediting the option price toward the settlement payment. We also affirm the decision of the trial court that Taylor was not harmed by Browning's failure to comply with the federal regulation's fifteen day payment requirement, that Browning did not breach the covenant of good faith and fair dealing, and that Taylor is not entitled to punitive damages.

However, we reverse the decision of the trial court that Browning could recompute settlements under the 1989 agreement and use those recalculated amounts as set-offs against amounts he owed Taylor under the 1991 agreement. We also hold that Taylor should have been permitted to amend his pleadings to conform to the evidence regarding mitigation of damages, and hold that the indemnity provisions in the agreements do not bar Taylor's claims. Finally, we find that Browning did not prove lost profit damages, and that other damages were unsupported by findings of fact.

Because of the mixed result, we award no costs on appeal.

We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.