## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36613

CLIMAX, LLC,                                   )
                                               )  **Idaho Falls, September 2010 Term**
    **Plaintiff-Appellant,**                  )
                                               )  **2010 Opinion No. 104**
v.                                             )
                                               )  **Filed: October 6, 2010**
SNAKE RIVER ONCOLOGY OF                        )
EASTERN IDAHO, PLLC, and                       )  **Stephen W. Kenyon, Clerk**
CHRISTIAN SHULL, M.D.,                         )
                                               )
    **Defendants-Respondents.**              )
_____         )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

The summary judgment is <u>vacated</u> and this case is <u>remanded</u> to the district court for further proceedings. Costs are awarded to appellant.

Smith, Driscoll and Associates, PLLC, Idaho Falls, for appellant. Buster J. Driscoll argued.

Carey Perkins LLP, Idaho Falls, respondent. Jeremy D. Brown argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

When the principal of Snake River Oncology of Eastern Idaho, Dr. Christian Shull, left Idaho for military duty, he exercised its rights under the Servicemembers Civil Relief Act to terminate the office-space lease of his practice with Climax, LLC. Climax appeals the district court's grant of summary judgment in favor of Snake River Oncology and Dr. Shull, seeking equitable relief for losses it suffered from the lease termination.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Snake River Oncology of Eastern Idaho ("SRO") is Dr. Christian Shull's oncology practice in Idaho Falls. In 2004, SRO entered an office lease with Climax, LLC ("Climax"), the

appellant, for a five-year period ending in November of 2009.  Dr. Shull personally guaranteed the lease.

Dr. Shull, who in January of 2007 was a major in the U.S. Army Reserves, received a letter summoning him to active duty to begin in February of 2007.  The day before he left to report for duty, Dr. Shull signed an agreement to buy a much larger office building for over $1.8 million and to purchase medical equipment for an additional $300,000.  Dr. Shull made the purchase primarily because the seller, another oncologist in Idaho Falls, was planning to retire, and Dr. Shull did not want any other oncologists to enter the local market.  While he was gone on active duty, Dr. Shull had to pay another oncologist about $100,000 to step in and continue his practice.  His absence reduced his net profits from new-patient referrals and required him to take out an operating loan to cover day-to-day expenses.  Nonetheless, Dr. Shull's practice was still profitable throughout 2007.  His 2007 adjusted gross income was nearly $887,000, an increase of $180,000 over the previous year.  Dr. Shull also cannot quantify the actual number of new patients he lost.

Because he had just purchased a new office building, Dr. Shull decided to terminate his lease with Climax.  Shortly after he left for active duty with the U.S. Army in California, he sent written notice to Climax that he was exercising his rights under § 305 of the Servicemembers Civil Relief Act of 2003, 50 U.S.C. app. § 501–596 ("SCRA"), to end the lease.  Dr. Shull actually returned from active duty before his lease termination became effective on May 30, 2007.  Climax asserts that Dr. Shull's decision to end the lease cost it $75,000 in lost rents and costs associated with finding a new tenant.

Climax filed a lawsuit against SRO and Dr. Shull, requesting compensation for the expenses it incurred due to Dr. Shull's decision to terminate his lease early.  Climax sued under § 305(g) of the SCRA, which permits courts to provide equitable relief to lessors when servicemembers terminate leases of premises.  The district court declined to award any relief to Climax and granted summary judgment to Dr. Shull.  Instead of balancing the equities between the parties, the court stated that Climax could not show "sufficient grounds to invoke equity, such as mutual mistake, fraud, or impossibility."  In particular, it held that Climax could not show a fraud claim against Dr. Shull because he did not mislead Climax about his possible future military service when he entered the lease.  Climax appealed, contending that, under § 305(g) of the SCRA, the district court should not have required it to prove a specific equitable cause of

action, but instead should have balanced the equities and more broadly considered whether it was fair to relieve Dr. Shull of his obligations under the lease.

### III. Issues on Appeal

1.  Whether the district court abused its discretion by refusing to modify SRO's and Dr. Shull's relief under § 305(g) of the SCRA.

2.  Whether SRO and Dr. Shull are entitled to attorney fees in the district court under I.C. § 12-120(3).

3.  Whether either party is entitled to attorney fees on appeal under I.C. § 12-120(3).

### IV. Standard of Review

The interpretation of a statute is an issue of law subject to free review on appeal. *Grease Spot, Inc. v. Harnes*, 148 Idaho 582, 584, 226 P.3d 524, 526 (2010). Statutory analysis "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *Harrison v. Binnion*, 147 Idaho 645, 649, 214 P.3d 631, 635 (2009) (quoting *McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006)).

This Court reviews the district court's rulings on equitable remedies for an abuse of discretion. *O'Connor v. Harger*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008). The standard of review for an abuse of discretion "is whether the court perceived the issue as one of discretion, acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and reached its decision by an exercise of reason." *Read v. Harvey*, 147 Idaho 364, 369, 209 P.3d 661, 666 (2009).

### V. Analysis

**A.    The District Court Applied an Incorrect Legal Standard by Requiring Climax to Prove an Equitable Claim to Obtain Relief Under §305(g) of the SCRA**

The Soldiers' and Sailors' Civil Relief Act of 1940 underwent a number of amendments in 2003, including being renamed the Servicemembers Civil Relief Act.[1] At that time, Congress created § 305, which was adapted from another similar provision enacted earlier.[2] Section 305

---

[1] Soldiers' and Sailors' Civil Relief Act of 1940, ch. 888, § 12, 54 Stat. 1178 (1940); Servicemembers Civil Relief Act of 2003, Pub. L. No. 108-189, Sec. 1, 117 Stat. 2835 (2004) (codified at 50 U.S.C. app. §§ 501–596 (2010)).

[2] *See* Act of Oct. 6, 1942, ch. 581, § 12, 56 Stat. 772 (codified at 50 U.S.C. app. § 534 (1942)) (creating the predecessor to § 305, which permitted servicemembers to terminate leases while on active duty and also contained a lessor-relief provision).

permits a servicemember to terminate a lease of residential or business premises if the servicemember is called up to deploy with a military unit. 50 U.S.C. app. § 535(a), (b).[3] Termination is effective thirty days after the next date rent is due once the servicemember gives notice to the lessor, which is required by the Act. *Id.* § 535(c), (d). The parties do not dispute that Dr. Shull followed the correct procedural steps to cancel his lease and that he was statutorily entitled to do so.

This case turns instead upon the lessor-relief provision in § 305(g). This subsection states in full: "Upon application by the lessor to a court before the termination date provided in the written notice, relief granted by this section to a servicemember may be modified as justice and equity require." 50 U.S.C. app. § 535(g). Dr. Shull argues that Climax is not entitled to equitable relief under § 305(g) because it could not establish any particular equitable claim such as fraud, mutual mistake, or impossibility. Climax, on the other hand, maintains that § 305(g) does not require a lessor to prove any specific equitable doctrine but instead allows the court to undergo a general inquiry that balances the equitable interests of each party. It asserts that Dr. Shull, who at no time suffered any financial hardship, unfairly took advantage of his short military deployment by terminating his lease and relocating into his newly purchased offices.

In general, the bare fact that one party's actions benefit another party does not require the courts to intervene. This principle is especially true where, as here, Congress has signaled its intent to protect active-duty servicemembers who must end a lease of a premises to serve in the armed forces. The Act's stated purpose is "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." 50 U.S.C. app. § 502(1). All of the SCRA, including § 305, should be liberally construed to benefit the men and women who serve our

---

[3] This provision permits a servicemember lessee to terminate only certain leases. 50 U.S.C. app. § 535 (a)(1). Section 305(b)(1) describes what leases may be terminated:

> A lease of premises occupied, or intended to be occupied, by a servicemember or a servicemember's dependents for a residential, professional, business, agricultural, or similar purpose if—
>
> (A)  the lease is executed by or on behalf of a person who thereafter and during the term of the lease enters military service; or
>
> (B)  the servicemember, while in military service, executes the lease and thereafter receives military orders for a permanent change of station or to deploy with a military unit, or as an individual in support of a military operation, for a period of not less than 90 days.

50 U.S.C. app. § 535(b)(1). Military service is synonymous with "active duty," which means "full-time duty in the military service of the United States." 10 U.S.C. § 101(d)(1); *see also* 50 U.S.C. app § 511(2) (stating that "military service" under the SCRA means "active duty").

4

country while on active duty. *Patrikes v. J.C.H. Serv. Stations*, 41 N.Y.S.2d 158, 166 (N.Y. City Ct. 1943) (interpreting a prior version of § 305, previously codified at 50 U.S.C. app. § 534 (1942)); *see also Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1244 (W.D. Wash. 2006) (referring to the SCRA generally).

Even though Congress enacted the SCRA to benefit servicemembers, the plain text of § 305(g) does not require a lessor to demonstrate any particular recognized equitable theory to obtain relief against a servicemember who prematurely terminates a lease. The lessor-relief provision instead allows courts to modify relief "as justice and equity require," which calls for a more general balancing of equities between the parties without referring to any specific equitable remedy. 50 U.S.C. app. § 535(g). "In its broadest and most general signification, equity denotes the spirit and habit of fairness, justness, and right dealing which would regulate the intercourse of men—the rule of doing to all others as we desire them to do to us." *Land v. United States*, 29 Fed. Cl. 744, 752 (Fed. Cl. 1993) (quotation omitted); *see also Black's Law Dictionary* 619 (9th ed. 2009) (defining "equity" as the "body of principles constituting what is fair and right; natural law"). Equity should create justice for all parties, *Bollinger & Boyd Barge Service, Inc. v. Motor Vessel*, 576 F.2d 595, 598 (5th Cir. 1978), and is intended to be flexible rather than to adhere to mechanical rules, *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582, 584 (1946).

Thus, rather than requiring a particular showing of fraud or other specific claim, courts can deny or modify relief when they are convinced that the servicemember is invoking § 305 for a "needless or unwarranted purpose." *Patrikes*, 41 N.Y.S.2d at 165. "Equity does not serve one who *profits* at the expense of another." *Chevron U.S.A. Inc. v. Mobil Producing Texas & New Mexico*, 281 F.3d 1249, 1256 (Fed. Cir. 2002) (emphasis added). Virtually all servicemembers who prematurely terminate a lease under the SCRA will do so because it benefits them, but as the U.S. Supreme Court has observed, many in the armed forces are capable of managing their affairs at home and upholding their private obligations while on active duty. *Boone v. Lightner*, 319 U.S. 561, 568 n.2, 63 S. Ct. 1223, 1226 n.2 (1943) (quoting H.R. Rep. No. 65-181, at 5 (1917)). Because Congress designed the SCRA to alleviate burdens associated with serving on active duty, "'military service must be the reason for the defendant not meeting his obligations.'"[4] *Id.* Where a servicemember opportunistically uses his or her deployment for

---

[4] In *Boone*, the U.S. Supreme Court quoted heavily from a House Report regarding a different provision of the Soldiers' and Sailors' Civil Relief Act that allowed the courts to stay an action against a servicemember unless the

5

personal gain at the lessor's expense, there may be grounds to reform the servicemember's relief under § 305(g).

In gauging whether a servicemember is seeking relief under the SCRA for an inappropriate purpose, the courts have broad discretion to analyze the unique circumstances of each case and to craft an individualized remedy. *See Int'l Salt Co. v. United States*, 332 U.S. 392, 400–01, 68 S. Ct. 12, 17 (1947) (referring to courts' general flexibility in crafting equitable remedies). Of course, if the lessor can demonstrate an equitable *claim*, such as fraud or mistake, a court would be justified in modifying relief under § 305. *Cf. Holscher v. James*, 124 Idaho 443, 447, 860 P.2d 646, 650 (1993) (stating that equitable contract remedies can apply where no others are available at law). An equitable claim is not necessary, however, as the lessor-relief provision allows the courts to consider all factors bearing on the parties' actions. For instance, in interpreting the predecessor to § 305, the court in *Omega Industries, Inc. v. Raffaele*, 894 F. Supp. 1425 (D. Nev. 1995), inquired into whether the servicemember appeared to be entering active service to avoid the lease and whether entering active service itself imparted a financial advantage on the servicemember. *Id.* at 1434–35 (analyzing § 304(2) of the 1940 Act, the predecessor to today's § 305, which had a virtually identical lessor-relief provision). Courts might also consider the servicemember's financial and business dealings, whether the servicemember would have terminated the lease regardless of whether he or she was called up for active duty, and other burdens he or she might suffer by leaving home to serve in the military.

Equity not only permits courts to analyze all the relevant facts, it also permits courts to consider any equitable remedy. When applying § 305, a court need not view a lessor's application for relief as an all-or-nothing request. A court could, instead, partially compensate the lessor for lost rent or other expenses or impose other reasonable conditions on the servicemember's decision to terminate.

Dr. Shull contends that balancing all of the equities in each case would force servicemembers to demonstrate an undue hardship to terminate a lease under the SCRA. He

---

servicemember's defense of the action "is not materially affected by reason of his military service." 319 U.S. at 564–65, 63 S. Ct. at 1226. Dr. Shull correctly observes that the statute at issue here, § 305, contains no "material affect" provision, but cannot explain why the legislative policies that underlie a "material affect" provision would not apply equally to the lessor-relief provision in this case. Permitting courts to balance the equities between servicemember lessees and their lessors is driven by the same legislative policy as a law requiring servicemembers to suffer an undue hardship to stay proceedings against them. Both are designed to prevent people from abusing their SCRA remedies.

cites *Conroy v. Aniskoff*, 507 U.S. 511, 113 S. Ct. 1562 (1993), in which the U.S. Supreme Court refused to read an undue-hardship requirement into another remedial provision of the SCRA where no such condition applied. *Id.* at 516–18, 113 S. Ct. at 1566–67. On the contrary, § 305(g) expressly places the burden on the lessor to demonstrate that the relief would be inequitable or unjust. *See* 50 U.S.C. app. § 535(g) (stating that the lessor must apply to the court for an equitable modification). The inquiry described above does not require the servicemember to show anything to obtain relief beyond complying with the notice provisions in the statute. Whether abiding by the lease terms would pose an undue hardship to the servicemember would simply be one of many non-controlling factors for the court to analyze in deciding whether a lessor is entitled to modification of relief under § 305(g).[5]

This Court reviews for an abuse of discretion the district court's decision to grant or withhold equitable relief under § 305(g) of the SCRA. *O'Connor*, 145 Idaho at 909, 188 P.3d at 851 (stating that rulings on equitable remedies are issues of fact subject to review for an abuse of discretion). Again, when reviewing for an abuse of discretion, "this Court determines (1) whether the court perceived the issue as discretionary; (2) whether the court acted within the bounds of that discretion and applied the correct legal standards; and (3) whether the court reached its decision through an exercise of reason." *Am. Pension Servs., Inc. v. Cornerstone Home Builders, LLC*, 147 Idaho 638, 641, 213 P.3d 1038, 1041 (2009). The district court below correctly viewed its decision as one of discretion, but did not apparently identify the correct legal boundaries of that discretion. The court seemed to focus on specific equitable claims, suggesting it did not realize it had discretion to balance all of the parties' interests when granting relief under § 305(g) and award such relief, if any, as necessary to achieve fairness and equity between the parties. 50 U.S.C. app. § 535(g). The relief need not be all or nothing; the court could award any relief it deems appropriate. The district court clearly had that authority but did not seem to recognize it. Accordingly, summary judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

**B. Neither Party Is Entitled to Attorney Fees Either in the District Court or on Appeal**

---

[5] Although Dr. Shull repeatedly claims that Climax would force all servicemembers to show "undue hardship" in order to terminate a lease under § 305, this has never been Climax's position. It maintains that showing undue hardship is not a precondition to terminating a lease under § 305 but instead is simply one of many factors for a court to weigh in an equitable analysis.

The district court awarded attorney fees to SRO and Dr. Shull below. Dr. Shull also requests attorney fees under § 12-120(3) on appeal, while Climax requests attorney fees under I.C. § 12-120(3), apparently both in the district court and on appeal.

Idaho Code § 12-120(3) mandates that the courts award attorney fees to the prevailing party in a civil action involving a "commercial transaction." Since the Court reverses the summary judgment in favor of SRO and Dr. Shull and remands the case for more proceedings, neither party has yet prevailed. No attorney fees are appropriate under § 12-120(3) until the case is resolved. *See Thomas v. Medical Ctr. Physicians, P.A.*, 138 Idaho 200, 211, 61 P.3d 557, 568 (2002) (declining to award fees under § 12-120(3) where case was remanded for further proceedings).

## VI. CONCLUSION

The district court abused its discretion by applying an incorrect legal standard when it required Climax to demonstrate a specific equitable claim to obtain relief under § 305(g) of the SCRA. Summary judgment in favor of SRO and Dr. Shull is vacated as is the award of attorney fees and the case is remanded for further proceedings consistent with this opinion. Because further proceedings are necessary, neither party has prevailed for the purpose of attorney fees on appeal or in the district court and none are awarded. Costs to Appellant.

Chief Justice EISMANN, Justices BURDICK and J. JONES, **CONCUR.**

HORTON, J. concurring.

I write separately to explain why I join in the Court's conclusion that the district court failed to recognize the boundaries of its discretion and the governing legal standard.

The district court's opinion granting summary judgment framed the issue before it as follows: "Plaintiff seeks summary judgment on its claim for breach of contract, arguing that the SCRA does not allow Defendants to terminate the lease without a showing of hardship or some intended relief related to Shull's deployment. Defendants argue that the SCRA allows Defendants to terminate the lease." The district court concluded its opinion with the statement that "Plaintiff has not presented a compelling argument for this court to exercise its equitable discretion and withhold the protection of the Act." The only reasonable interpretation of these statements is that the district court believed that it was confronted with a binary choice: either to allow SRO and Dr. Shull to terminate the lease or to prevent the lease termination.

8

In this case, Climax did not seek to prevent termination of the lease as it had successfully re-let the property vacated by SRO, albeit for a lesser sum than it would have received from SRO and Dr. Shull.  Thus, Climax requested that the district court exercise its authority under § 305(g)[6] of the SCRA to modify the relief granted to Dr. Shull by requiring him and SRO to compensate Climax for its reduced rental income and expenses incurred in finding a replacement lessee.  As the Court's opinion properly holds, § 305(g) grants the trial court broad discretion to fashion the remedy it deems required by "justice and equity."  Thus, the district court had three options:  (1) to deny Climax any recovery (the minimum); (2) to require SRO and Dr. Shull to compensate Climax for all losses incurred by reason of the lease termination (the maximum); or (3) to require SRO and Dr. Shull to pay any sum between the minimum and maximum that it adjudged necessary to satisfy the requirements of justice and equity.  As it does not appear that the district court appreciated the availability of this third option, I join in the Court's opinion.

I also concur with the Court's conclusion that the district court erred by requiring Climax to demonstrate the existence of an equitable right of relief "such as mutual mistake, fraud, or impossibility" as a precondition to recovery under § 305(g).  There is nothing in the SCRA that suggests that servicemembers are generally immune from civil liability; to the contrary, the express purpose of the SCRA, as articulated in § 2, is "to provide for the *temporary* suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. app. § 502(2) (emphasis added).  If Climax had a civil remedy available to it, either in law or under a recognized equitable theory, it could have pursued an action against SRO and Dr. Shull without recourse to § 305(g).  However, because the SCRA granted Dr. Shull the right to terminate the lease, Climax's only hope for recovering some or all of its claimed losses rests upon its ability to persuade the district court that such recovery is required by "justice and equity."

Chief Justice EISMANN concurs.

---

[6] In the interest of consistency, this concurring opinion adopts the convention applied in the Court's opinion of referring to sections of the Act rather than sections of the United States Code.  Section 305 is that portion of the SCRA that is codified at 50 U.S.C. app. § 535(g).

9