# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38603

AED, INC., an Idaho corporation, )
)       **Boise, February 2013 Term**
    Plaintiff-Appellant, )
)       **2013 Opinion No. 88**
v. )
)       **Filed: August 15, 2013**
KDC INVESTMENTS, LLC, a Virginia LLC, )
and LEE CHAKLOS and KRYSTAL )       **Stephen Kenyon, Clerk**
CHAKLOS, individually, )
)
    Defendants-Respondents. )

_____

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The district court's grant of summary judgment in favor of KDC on AED's claims as to fraud, breach of contract, and rescission of the Sales Agreement is <u>affirmed</u>. The district court's order quieting title to the Bellaire Toll Bridge in KDC is <u>affirmed</u>.

Bistline Law, PLLC, Coeur d'Alene, for appellant. Arthur Bistline argued.

Silvey Law Office, Ltd., Star, for respondents. Greg Silvey argued.
_____

HORTON, Justice.

The underlying dispute in this matter centers on the sale and demolition of a bridge across the Ohio River between West Virginia and Ohio. Advanced Explosives Demolition, Inc. (AED) entered a contract to sell the bridge to KDC Investments, LLC (KDC) for $25,000. AED alleges that it also entered into another contract in which KDC hired it to perform explosive demolition work prior to removal of the bridge. After the bridge sale was complete, KDC terminated its relationship with AED and hired another demolition contractor. AED brought an action for fraud and breach of contract against KDC and asked the district court to rescind the sales contract. The district court denied the request for rescission and granted summary judgment in favor of KDC on the fraud and breach of contract claims, holding that AED had provided no evidence of fraud and concluding that the demolition contract was illegal because AED did not have the necessary West Virginia contractor's license when it entered into the contract. AED

1

appeals from the district court's denial of its request for rescission and from the grant of summary judgment in favor of KDC. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

AED and KDC executed an "Asset Purchase and Liability Assumption Agreement" (Sales Agreement) on May 20, 2010. Under the terms of the Sales Agreement, AED transferred all of its interest in the Bellaire Toll Bridge (Bridge) to KDC. As consideration, KDC agreed to the terms of the Sales Agreement and to pay $25,000 to AED. The Sales Agreement includes a merger clause and provides that it is "a negotiated contract . . . not to be construed for or against" either party. KDC paid $25,000 to AED on June 3, 2010, and began the demolition process.

On June 1, 2010, AED's vice president, Eric Kelly, and KDC's owner, Krystal Chaklos, signed the last page of a document entitled "Proposal" (Blasting Agreement). This document set forth AED's proposed terms for it to perform part of the demolition of the Bridge for KDC. The front page of the document provided a signature line for KDC to accept the proposal and authorize AED to begin work, but there is no signature. KDC alleges that it signed the last page of the Blasting Agreement to acknowledge its receipt and that, at the time it signed, KDC intended to hire AED to perform the explosives work.

Under West Virginia law, a person may not "engage in this state in any act as a contractor, or submit a bid to perform work as a contractor, . . . unless such person holds a license issued under the provisions of this article." W. Va. Code Ann. § 21-11-6(a) (West). There is no evidence in the record indicating the date AED obtained its West Virginia Contractor's license, but it is undisputed that AED did not obtain the license until after the Blasting Agreement was signed. The district court noted that the date AED received its license was "unclear, but likely did not happen until October 17, 2010." KDC alleges it "repeatedly" informed AED that AED would need to obtain a West Virginia Contractor's License to perform the explosives demolition. Citing AED's failure obtain the license, KDC informed AED on July 7, 2010, that KDC was no longer interested in hiring AED for the blasting work.

AED filed its original complaint against KDC on August 23, 2010. KDC filed an answer and counterclaim on November 8, 2010, and an amended answer and counterclaim on November 9, 2010. AED then filed an amended complaint on October 29, 2010, alleging fraud in the inducement and breach of contract, and seeking rescission, damages, or specific performance.

2

KDC moved for a preliminary injunction, which the district court denied. In its decision, the district court also determined that AED was not entitled to rescission of the Sales Agreement.

The district court set forth the subsequent procedural history of this litigation as follows:

> On December 15, 2010, KDC filed its Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, and the Affidavits of Randall Schmitz, Lee Chaklos, and Krystal Chaklos in support of the motion. . . . Hearing on KDC's motion for summary judgment was held on January 12, 2011. This Court heard oral argument on AED's motion to reconsider the Court's ruling that AED was not entitled to rescission of the contract on January 26, 2011. On January 31, 2011, the Court issued its Memorandum Decision and Order Granting Defendant KDC's Motion for Summary Judgment and Denying Plaintiff AED's Motion for Reconsideration. On February 3, 2011, the parties stipulated to dismiss Counts I and II of KDC's counterclaim without prejudice.

On February 4, 2011, AED filed another motion for reconsideration, asking the court to vacate the portion of its summary judgment that granted KDC's request for an order quieting title of the Bridge in its name or, alternatively, to submit to the jury the question of "whether AED would have sold the bridge without the agreement that AED perform the blast." After hearing oral argument, the district court denied AED's second motion to reconsider. AED filed a motion to alter or amend the judgment on February 28, 2011, which the district court denied. AED timely appealed.

## II. STANDARD OF REVIEW

This Court exercises *de novo* review of a grant of summary judgment and the "standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Stonebrook Const., LLC v. Chase Home Fin.*, *LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)). Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When applying this standard, this Court construes disputed facts "in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party." *Curlee*, 148 Idaho at 394, 224 P.3d at 461. Where "the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citing *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002)). However, to

survive summary judgment, "an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(c). Therefore, "the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists . . . ." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005) (citing *Northwest Bec–Corp. v. Home Living Serv.*, 136 Idaho 835, 839, 41 P.3d 263, 267 (2002)). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

We recently clarified the standard this Court uses when reviewing a denial of a motion for reconsideration:

> [W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration. If the decision was within the trial court's discretion, we apply an abuse of discretion standard. On the other hand, when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment.

*Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Stated differently, if the underlying decision for which reconsideration is sought required the exercise of discretion, we will review the grant or denial of the motion for an abuse of discretion. If the decision turned on a question of law, we will exercise free review.

### III. ANALYSIS

AED appeals from the district court's decision granting summary judgment for KDC as well as from its orders denying reconsideration. We use the same standard when reviewing the denial of a motion for reconsideration following a grant of summary judgment as we use when reviewing an appeal from the grant of summary judgment. Thus, it is not necessary to separately discuss issues that the district court decided both on summary judgment and reconsideration.

### A. AED waived the issue of whether the district court erred in striking portions of the affidavits AED offered in opposition to KDC's motion for summary judgment.

AED argues that the district court erred in striking six paragraphs of Eric Kelly's affidavit in opposition to summary judgment and the entirety of Mark Wilburn's affidavit in opposition to summary judgment. In response, KDC contends that the district court's ruling was correct or, alternatively, that any error was harmless.

This Court has held that "when appealing from an evidentiary ruling reviewed for abuse of discretion, the appellant must demonstrate both the trial court's abuse of discretion and that the error affected a substantial right." *Hurtado v. Land O'Lakes, Inc.*, 153 Idaho 13, 18, 278 P.3d 415, 420 (2012). If the appellant does not present argument that the court's error affected a substantial right, the issue is waived. *Id.*

Here, while AED provides argument to support its claim that the district court's decision to strike the affidavits was an abuse of discretion, it does not explain how the alleged errors affected its substantial rights. Consequently, we will not consider the issue.

## B. We affirm the grant of summary judgment on AED's claim of fraudulent inducement because AED failed to contest the alternate ground upon which summary judgment was granted.

AED argues that KDC fraudulently induced it to execute the Sales Agreement, alleging that KDC never intended for AED to perform the explosive demolition work, but only agreed to hire AED to induce it to sell the Bridge to KDC. In response, KDC replies that summary judgment was appropriate because AED failed to challenge all of the district court's grounds for its judgment, and, alternatively, because AED failed to present evidence that KDC did not have the intention to use AED for the explosives work at the time it signed the contracts.

This Court has held that when a district court grants summary judgment on multiple independent grounds, the appellant must successfully challenge all of those grounds to prevail on appeal. For example, in *Weisel v. Beaver Springs Owners Ass'n, Inc.*, the plaintiff sought to rescind a contract on the ground of mutual mistake. 152 Idaho 519, 524, 272 P.3d 491, 496 (2012). The district court granted summary judgment for the defendant on two alternative grounds; first, that no genuine issue of material fact existed and the claim was without merit, and second, that the mutual mistake claim was barred by the statute of limitations. *Id.* at 525, 272 P.3d at 497. We held that "an appellant's failure to address an independent ground for a grant of summary judgment is fatal to the appeal," and declined to consider the claim. *Id.* at 525-26, 272 P.3d at 497-98 (citing *Andersen v. Prof'l Escrow Serv., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005)). Even if the appellant shows that the district court erred in granting summary judgment on some of the grounds, the judgment must be affirmed on the grounds not properly appealed. *Andersen*, 141 Idaho at 746, 118 P.3d at 78 ("[T]he fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the

5

other grounds.")(citation omitted). Thus, if an appellant fails to contest all of the grounds upon which a district court based its grant of summary judgment, the judgment must be affirmed.

In this case, the district court granted KDC's summary judgment motion on two grounds, ruling that: 1) AED's failure to obtain a West Virginia Contractor's License barred it from justifiably relying upon the alleged misrepresentations by KDC, and 2) AED's failure to present any evidence that KDC did not intend to hire AED to perform the Blasting Agreement when it was signed. In its opening brief, AED addressed the second of those two grounds, arguing that its evidence is sufficient to establish the existence of a genuine issue of material fact as to whether KDC had a present intention to honor the Blasting Agreement when it was signed. But nowhere in that brief does AED present arguments challenging the district court's determination that AED's failure to obtain a West Virginia Contractor's License prevented it from justifiably relying on any alleged misrepresentation.[1] Consequently, we decline to address AED's argument regarding the fraudulent inducement claim because the judgment must be affirmed on the unchallenged alternative ground that AED was not entitled to rely on any alleged misrepresentation by KDC.

**C. The district court's order quieting title in favor of KDC was proper because the Blasting Agreement was not part of the consideration for the Sales Agreement.**

In its order granting summary judgment, the district court also granted KDC's request for a decree quieting title in the Bridge in its favor. AED asserts that the Blasting Agreement was material to the Sales Agreement and an essential part of the consideration for that contract. Consequently, it argues, if this Court determines that the Blasting Agreement is an illegal contract, the Sales Agreement is also illegal as a matter of law, and KDC is not entitled to the order quieting title. Alternatively, AED contends summary judgment was inappropriate because the evidence in the record demonstrates the existence of a genuine issue of material fact as to whether the parties intended the Blasting Agreement to be consideration for the Sales

---

[1] AED attempted to address this issue in its reply brief. It asserts that the basis for the district court's determination that AED cannot rely on the alleged misrepresentation by KDC is the illegality of the Blasting Agreement. While it is unclear from the briefing, AED seems to contend that by challenging the district court's finding of an illegal contract with respect to the breach of contract claim, it has also challenged the underlying rationale for the district court's decision regarding reliance in the fraud claim. However, even if this argument were germane to the issue, we have held that arguments in an appellant's reply brief are not sufficient to raise an issue on appeal and that this Court "will not consider an issue not supported by argument and authority in the opening brief." *See, e.g.*, *Weisel*, 152 Idaho at 525, 272 P.3d at 497 (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010)).

Agreement. In response, KDC argues, *inter alia*, that the Sales Agreement is an integrated agreement and its plain language shows that the Blasting Agreement was not part of the consideration for the Sales Agreement.

The parol evidence rule bars the use of extrinsic evidence when a court interprets a written contract. "Where a written agreement is integrated, questions of the parties' intent regarding the subject matter of the agreement may only be resolved by reference to the agreement's language." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, ___, 297 P.3d 222, 230 (2012) (citing *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991)). If a written contract contains a merger clause, it is an integrated agreement for purposes of the parol evidence rule. *Id.* (citing *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005) ("The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated.")). Thus, extrinsic evidence may not be used to determine whether a written and integrated contract is based upon consideration other than what is contained in the text of the contract.[2]

The Sales Agreement in this case is a written and integrated contract and therefore, the parties' intent must be determined solely from the language of the agreement. Paragraph 32 of the Sales Agreement provides:

> This Agreement sets forth the entire agreement among the parties hereto and fully supersedes any and all prior discussions, agreements, or understandings between the parties and cannot be changed except by a written agreement executed by all of the parties. All material representations by the Sellers regarding the Bridge which is relied upon by the Buyer are set forth in this Agreement.

The Sales Agreement also provides, in a section captioned "Consideration," that "[i]n addition to the promises set forth in this Agreement by the Buyer, which shall constitute consideration for this Agreement, Buyer shall pay AED $25,000.00 for the Bridge and all associated property transferred by the Agreement upon execution of this Agreement." There is no reference to the

---

[2] To the extent AED argues that the parol evidence rule does not apply in this case because of the exception related to fraud, its argument is without merit. In the absence of fraud, the parol evidence rule bars introduction of extrinsic evidence to prove the intent of the parties. It is true that the parol evidence rule "does not preclude admission of evidence that one party to a contract made representations that fraudulently induced the other party to enter into the contract." *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002) (citing *Thomas v. Campbell*, 107 Idaho 398, 402, 690 P.2d 333, 337 (1984)). However, with respect to this issue, AED's argument is that the Blasting Agreement is consideration for the Sales Agreement and thus, if the Blasting Agreement is illegal, then the Sales Agreement is also illegal. Therefore, any extrinsic evidence AED might present would not be to demonstrate fraud, but to show that the parties intended the Blasting Agreement to form part of the consideration for the sale of the Bridge. This kind of evidence is clearly barred by the parol evidence rule.

Blasting Agreement in this recital of consideration. Additionally, the contract expressly provides that it is not dependent upon any contingencies. Thus, the plain language of the Sales Agreement demonstrates that the consideration for the Sales Agreement consists only of the $25,000 payment and the obligations identified in the contract. Because the Sales Agreement is an integrated contract that does not include KDC's performance of the Blasting Agreement as part of its consideration, we affirm the district court's order quieting title in favor of KDC.

**D. We affirm the district court's grant of summary judgment denying AED's request for rescission because that remedy is not available to AED in the absence of proof of fraud or a material breach of the Sales Agreement.**

The district court ruled that rescission of the Sales Agreement was not available to AED because AED failed to tender, or offer to tender, to KDC the $25,000 KDC paid as consideration. AED argues that it was seeking an equitable rescission on the grounds of fraud and material breach. Therefore, it argues, only an offer of tender was required, which AED claims it made on July 13, 2010. KDC replies that summary judgment was appropriate because AED failed to prove its claim of fraud and, alternatively, failed to challenge all of the district court's grounds for its judgment.

"Rescission is an equitable remedy within the discretion of the trial court." *Bolognese v. Forte*, 153 Idaho 857, 864, 292 P.3d 248, 255 (2012) (citing *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010)). Equitable remedies are available when "there is no adequate remedy at law," and if "sufficient grounds to invoke equity, such as mutual mistake, fraud, or impossibility, are present." *Id.* (quoting *Holscher v. James*, 124 Idaho 443, 447, 860 P.2d 646, 650 (1993)). Rescission is also available if one party materially breaches the contract. *Borah v. McCandless*, 147 Idaho 73, 79, 205 P.3d 1209, 1215 (2009) (citing *Ervin Const. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993)). However, rescission is not available if the party seeking to rescind the contract "fails to prove a ground for invoking that remedy." *Bolognese*, 153 Idaho at 865, 292 P.3d at 256.

In this case, AED would only be entitled to rescission if it proved fraud or a material breach of the contract. However, as explained above, the district court properly granted KDC's motion for summary judgment as to AED's claim of fraudulent inducement. Aside from its contention that the Blasting Agreement was part of the consideration for the Sales Agreement, AED has not identified a material breach of the Sales Agreement by KDC. Therefore, we affirm the district court's grant of summary judgment in favor of KDC on this alternative ground.

8

*Hoffer v. City of Boise*, 151 Idaho 400, 403, 257 P.3d 1226, 1229 (2011) (citing *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 382, 234 P.3d 699, 706 (2010)).

**E. We affirm the district court's grant of summary judgment on AED's claim for breach of contract because the Blasting Agreement was an illegal contract.**

The district court found that AED was not properly licensed as a contractor at the time it submitted the bid that gave rise to the Blasting Agreement and therefore concluded that, under Idaho law,[3] the Blasting Agreement was illegal and unenforceable. AED argues that summary judgment was not appropriate because its lack of a contractor's license at the time it entered the Blasting Agreement did not render the contract illegal. Alternatively, AED contends that even if the contract was illegal when entered, it obtained the license before it performed any work, which validated the contract. KDC replies that a contract entered into without a required license is an illegal and unenforceable contract. KDC further contends that an unlicensed party cannot validate an illegal contract by obtaining the license after entering the contract.

*1. The Blasting Agreement was an illegal contract.*

Whether a contract is illegal is a question of law. *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002) (citing *Morrison v. Young*, 136 Idaho 316, 318, 32 P.3d 1116, 1118 (2001)). A contract that "rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy" is an illegal contract. *Farrell v. Whiteman*, 146 Idaho 604, 609, 200 P.3d 1153, 1158 (2009) (citing *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997)). Consequently, the general rule is that "when the consideration for a contract explicitly violates a statute, the contract is illegal and unenforceable." *Id.* (citing *Barry v. Pac. W. Constr., Inc.*, 140 Idaho 827, 832, 103 P.3d 440, 445 (2004)). Further, an illegal contract is void. *Barry v. Pac. W. Const., Inc.*, 140 Idaho at 832, 103 P.3d at 445 (citing *Quiring*, 130 Idaho at 568, 944 P.2d at 703). Thus, where "a contract is illegal and void, the court will leave the parties as it finds them and refuse to enforce the contract." *Taylor v. AIA Services Corp.*, 151 Idaho 552, 565, 261 P.3d 829, 842 (2011) (quoting *Wernecke v. St. Maries Joint School Dist. # 401*, 147 Idaho 277, 287, 207 P.3d 1008, 1018 (2009)).

This Court most recently addressed the subject of illegal contracts in *City of Meridian v. Petra Inc.*, 154 Idaho 425, 299 P.3d 232 (2013), when we considered the effect of the parties'

---

[3] In both the Sales Agreement and the Blasting Agreement the parties agreed that Idaho law would apply to control and interpret the agreements. AED does not challenge the choice of law provision in either agreement and therefore, Idaho law is applied to determine whether AED's failure to obtain a West Virginia license prior to entering the Blasting Agreement rendered that contract illegal.

efforts to circumvent the Public Works Construction Management Licensing Act of 1998 (specifically I.C. § 54–4512) which required Petra to post a payment and performance bond. We defined illegal contracts as follows: "'a contract [that] cannot be performed without violating applicable law is illegal and void.'" *Id.* at ___, 299 P.3d at 252 (citing 17A Am.Jur.2d *Contracts* § at § 229). In *Petra*, we noted that the contract was "fully capable of being performed without violating I.C. § 54–4512—the parties simply failed to do so." *Id.* at ___, 299 P.3d at 253. In reaching this conclusion, we distinguished our holding from that in *Farrell*:

> Our holding in *Farrell v. Whiteman,* 146 Idaho 604, 200 P.3d 1153 (2009), wherein we found an architectural agreement illegal, would not apply to these facts. In *Farrell,* the statute explicitly required licensing not just for practicing architecture, but for offering to practice. A mere offer to provide unlicensed architectural services would thus be illegal and, consequently, an agreement between an unlicensed architect and a client was necessarily void. Idaho Code § 54–4512, on the other hand, gives no time frame for securing a bond—it only provides that construction managers must post one while providing services on public works projects.

*Id.* This case involves a statute more like that we considered in *Farrell* than the statute we considered in *Petra*. The Idaho Contractor Registration Act (ICRA) provides that "it shall be unlawful for any person to engage in the business of, or hold himself out as, a contractor within this state without being registered as required in this chapter." I.C. § 54-5204(1). Under the ICRA, a contractor includes "[a]ny person who in any capacity undertakes, offers to undertake, purports to have the capacity to undertake, or *submits a bid* to, or does himself or by or through others, perform construction . . . ." I.C. § 54-5203(4)(a) (emphasis added). Thus, a contract for work subject to the requirements of the ICRA is illegal if the contractor is unregistered when the contract is executed because the consideration consists of an act that is contrary to law and public policy.

Our conclusion that the Blasting Agreement is illegal accords with the Idaho Legislature's intent in enacting the registration statute. Under the ICRA, a contractor may not enforce a contract for work performed while unregistered. The Legislature set forth an extraordinary scheme of penalties against unregistered contractors, reflecting the importance it placed on compliance. For example, unregistered contractors "shall be denied and shall be deemed to have conclusively waived any right to place a lien upon real property as provided for in chapter 5, title 45, Idaho Code." I.C. § 54-5208. Additionally, the ICRA expressly limits an unregistered contractor's ability to enforce contracts:

10

No person engaged in the business or acting in the capacity of a contractor, unless otherwise exempt, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which registration is required by this chapter without alleging and proving that he was a duly registered contractor, or that he was otherwise exempt as provided for in this chapter, at all times during the performance of such act or contract.

I.C. § 54-5217(2).

Likewise, the express policy underlying the West Virginia Act is to ensure "that all persons desiring to perform contracting work in this state be duly licensed . . . ." W. Va. Code Ann. § 21-11-2 (West). The statute plainly requires a license to submit a bid for, or offer to perform, contracting services; "No person may engage in this state in any act as a contractor, *or submit a bid* to perform work as a contractor, as defined in this article, unless such person holds a license issued under the provisions of this article." W. Va. Code Ann. § 21-11-6(a) (West) (emphasis added). This is significant in this case because there can be no contract without an offer and therefore, if licensing is required before a party may lawfully make an offer, a license is required to enter a contract.

AED has pointed to no evidence in the record to suggest that it had obtained a West Virginia Contractor's license by June 1, 2010, when it signed the Blasting Agreement.[4] The district court noted that the date AED received its license was "unclear, but likely did not happen until October 17, 2010." Regardless of the date, AED does not dispute that it did not obtain a license until after the Blasting Agreement was signed. Consequently, we hold that the Blasting Agreement is an illegal contract and is therefore void. Therefore, we affirm the district court's order granting summary judgment in favor of KDC on AED's claim for breach of contract.

### 2. Subsequent licensing does not validate an illegal contract.

In support of its contention that the Blasting Agreement was validated by its later compliance with the West Virginia Act, AED relies in part on *ParkWest Homes v. Barnson*, 149 Idaho 603, 238 P.3d 203 (2010). In that case, a contractor signed a home construction contract prior to becoming registered as required by the ICRA. *Id.* at 604, 238 P.3d at 204. There was a dispute regarding payment, and in the contractor's subsequent litigation to foreclose a mechanic's lien, the district court *sua sponte* determined the contract was void because the

---

[4] In Mark Wilburn's affidavit of November 24, 2010, he states that "AED has acquired all necessary permits to demolish the bridge, other than the permission of the United States Coast Guard." However, in its decision denying KDC's request for injunctive relief, the district court granted KDC's motion to strike this affidavit. In any event, the affidavit does not state when the license was obtained.

11

contractor was not registered at the time it signed the contract. *Id.* at 608, 238 P.3d at 208. Because the contractor did not challenge this decision on appeal, this Court did not review it. *Id.* Instead, the Court considered whether the district court correctly ruled that the contractor's lien was also void because the contract was void. *Id.* The Court noted that under Idaho Code § 45-501, a lien is granted for "the work or labor done . . . or materials furnished," not merely for entering a contract. *Id.* Based upon that statute and the language of the ICRA, which denies lien rights to "[a] contractor who is not registered," the Court held that a contractor is entitled to a lien for work and materials provided during the time it is registered. *Id.* at 608-09, 239 P.3d at 208-09. Thus, contrary to AED's contention, the Court did not hold that the contract was somehow validated by the contractor's later registration. Rather, the Court determined that a lien is valid for work done while a contractor is registered, even if the contractor started the work prior to becoming registered.

*Farrell* also demonstrates that subsequent registration does not validate an illegal contract. In *Farrell*, an architect started providing architectural services to a land developer for a project in Idaho before he obtained an Idaho license but received his license before the project was completed. 146 Idaho at 608, 200 P.3d at 1157. When the developer later fired the architect without paying him for any of the services, the architect sued the developer, who defended on the ground that the contract was illegal and unenforceable because the architect was unlicensed. *Id.* The district court found that only an implied-in-fact contract existed and awarded damages to the architect based upon the theory of quantum meruit, concluding that because the architect had been licensed "at the critical times such a license was necessary," the contract was not illegal. *Id.* This Court reversed, holding that:

> [T]he district court went too far in interpreting the statute to merely require architects to be licensed at "critical times." . . . The statute reads "any person practicing or offering to practice architecture ... in the state of Idaho, shall ... be licensed." I.C. § 54–301. This unambiguously requires anyone who practices *any* architecture in Idaho to be licensed as required by the statute. Because [the architect] was not licensed to practice architecture in Idaho until February 17, 2004, the architectural services he rendered before then were done pursuant to an illegal contract.

*Id.* at 610, 200 P.3d at 1159. The Court first noted that the work the architect performed after obtaining his license was legal, and then held that the contract was severable because the work done after licensing was chronologically separable from the work done before. *Id.* at 611, 200 P.3d at 1160. Consequently, we held that quantum meruit was the proper measure of damages for

the work done after licensing. *Id.* However, the Court did not hold that the subsequent licensing validated the entire contract. Rather, it reiterated that the contract was illegal "up until [the architect] received his license. *Id.* at 612-13, 200 P.3d 1161-62. We explained that while illegal contracts are not generally enforceable, in cases like this, "where an exception[5] allows some recovery to one party to an illegal contract," the only remedy available is unjust enrichment. *Id.* (citing *Barry*, 140 Idaho at 834, 103 P.3d at 447). Thus, *Farrell* stands for the proposition that if a contractor becomes licensed part of the way through performance of a contract and if the post-licensing performance is severable, the licensee may be entitled to equitable remedies for the services rendered after licensure.

In this case, if AED had started performing its obligations under the contract prior to KDC's termination, it may have been able to recover under an unjust enrichment theory, but in the absence of performance, AED is not entitled to recover.

**F. KDC is entitled to attorney fees on appeal.**

AED requests attorney fees on appeal under Idaho Code § 12-120(3). Under section 12-120(3), attorney fees are available only to the prevailing party. Because AED is not the prevailing party, it is not entitled to attorney fees on appeal. *Mickelsen Const., Inc. v. Horrocks*, 154 Idaho 396, ___, 299 P.3d 203, 212 (2013) (citing *Storey Constr., Inc. v. Hanks*, 148 Idaho 401, 411, 224 P.3d 468, 478 (2009)). KDC argues that it is entitled to attorney fees on appeal under Idaho Code § 12-120(3) and § 12-121. We have explained the operation of I.C. § 12-120(3) as follows:

> The court must always award attorney fees to the prevailing party in commercial transactions. The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. Fees are required if the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover.

*Meyers v. Hansen*, 148 Idaho 283, 292, 221 P.3d 81, 90 (2009) (internal quotation marks and citations omitted). The claims in this matter are based upon the sale and demolition of the Bridge, which are commercial transactions. Therefore, because KDC is the prevailing party, it is entitled to attorney fees on appeal.

---

[5] The Court had already determined that an exception to the general rule applied in this case to "protect the public interest" by preventing a windfall to the developer in the form of competent architectural services at no cost. *Farrell*, 146 Idaho at 612, 200 P.3d at 1161.

## IV. CONCLUSION

We hold that AED waived the issue of whether the district court abused its discretion in striking the Wilburn Affidavit and portions of the Kelly Affidavit. We affirm the district court's grant of summary judgment in favor of KDC and the district court's order quieting title to the Bellaire Toll Bridge in KDC. We award attorney fees and costs on appeal to KDC.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.